IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-663-M-BM

| | | |
|---|---|---|
| MARK S. DUGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Mark S. Dugan ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-16] ("Pl.'s Brief") seeking judgment in his favor, and Defendant's responsive brief [DE-18] ("Def.'s Brief") in opposition. The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-16] be allowed in part, Defendant's brief [DE-18] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on May 16, 2023, alleging disability beginning August 9, 2021. Transcript of Proceedings ("Tr.") 69. His

claim was denied initially. Tr. 69-78; 90-94. Plaintiff filed a request for reconsideration (Tr. 100), and was denied upon reconsideration on October 9, 2023 (Tr. 79-89, 101-04). On October 13, 2023, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 105-06. A hearing before the ALJ was held on April 3, 2024, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 34-68. On May 20, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 14-33.

On May 27, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 204-06. On July 3, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

2

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation

3

resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 29.

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since August 9, 2021, the alleged onset date. Tr. 19.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: vertigo; post-traumatic stress disorder ("PTSD"); osteoarthritis; migraines; traumatic brain injury ("TBI") by history; neurocognitive disorder; substance use disorder; tinnitus/hearing loss; left shoulder tendonitis; sleep apnea; history of stroke/seizure; and depressive disorder. Tr. 19. The ALJ also found Plaintiff had the non-severe impairment of hyperlipidemia. Tr. 20

However, at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 22.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the

4

ability to perform light work[1] with the following limitations:

> frequent reaching in all directions, pushing, and pulling with the dominant left upper extremity; occasionally climb ladders, ropes and scaffolds; avoid concentrated exposure to noise with a maximum noise rating of 3 according to Selected Characteristics of Occupations (SCO), which is moderate. Avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He can generally understand and perform simple, routine, and repetitive tasks. He can maintain concentration, persistence, and pace to stay on task for periods of 2 hours at a time over the course of a typical 8-hour workday with normal breaks in order to perform such tasks. He requires a low stress work setting, which, in addition to the nature of the work being performed, is also defined as the work setting not being production-pace or quota-based. He requires a goal-oriented job primarily dealing with things instead of people. He is limited to no more than occasional social interaction with supervisors and co-workers as part of the job but no work with the public as part of the job, such as sales or negotiation, which does not preclude casual or incidental contact as it might arise. No more than occasional changes in the work setting.

Tr. 23.

The ALJ included the following footnote in his analysis of the RFC:

The undersigned recognizes various hypothetical questions were posed to the vocational expert by the undersigned and his/her attorney/representative. However, the claimant's residual functional capacity (RFC) reflects the actual limitations supported by the weight of the evidence, for the reasons explained throughout this decision. The fact that the undersigned and/or the claimant's attorney/representative might have asked the vocational expert questions about the effect(s) of greater limitation(s) than those assessed in the final RFC on the occupational base does not mean to imply the existence of these greater limitations, rather it is a means to gauge/assess the potential for restriction of the occupational

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id*. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id*.

base, assuming arguendo that such limitations(s) ultimately do find support by the weight of the evidence.

Tr. 23.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not persuasive of disability based upon the medical and other evidence in the record. Tr. 24.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as a meat cutter or sales assistant manager, as actually or generally performed. Tr. 27-28. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy. Tr. 28-29.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff contends that: (1) the ALJ committed reversible error by failing to appropriately find that Plaintiff's severe chronic PTSD met or equaled Listing 12.15 (Pl.'s Brief [DE-16] at 3, 19);[2] and (2) Plaintiff's claim should be ordered paid rather than remanded for further proceedings (*id.* at 3, 32). Each will be discussed below.

## VI. DISCUSSION

### A. Evaluation of Listing 12.15

Plaintiff contends that the ALJ erred by failing to appropriately find that his severe chronic PTSD met or equaled Listing 12.15. Pl.'s Brief [DE-16] at 2. Specifically, Plaintiff argues that this conclusion is warranted "given extensive support in the record of the severity of his PTSD and the impact of his PTSD, as well the severity of the symptoms from his other severe mental and

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

physical conditions." *Id.* at 21. In response, the Commissioner argues that "[t]he ALJ reasonably found that Plaintiff did not meet the stringent standard of Listing 12.15 since his alleged onset date." Def.'s Brief [DE-18] at 7.

To meet the requirements of Listing 12.15, trauma- and stressor-related disorders, a claimant must satisfy the paragraph A criteria, and either the paragraph B or paragraph C criteria. Plaintiff does not contend that he satisfies the paragraph C criteria, therefore the undersigned will only consider the paragraph A and paragraph B criteria of Listing 12.15. To satisfy Listing 12.15, a claimant must show:

> A. Medical documentation of *all* of the following:
> 1. Exposure to actual or threatened death, serious injury, or violence;
> 2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
> 3. Avoidance of external reminders of the event;
> 4. Disturbance in mood and behavior; and
> 5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).
>
>    AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, § 12.15 (2025).

The Commissioner does not contest that Plaintiff satisfies the paragraph A criteria. *See* Def.'s Brief [DE-18] at 8 ("Even if Plaintiff could meet the 'A' criteria, that is not the end of the inquiry . . ."). The undersigned therefore considers this issue to be conceded. *See Reed v. Fairfax Cty.*, No. 1:18-cv-1454, 2020 U.S. Dist. LEXIS 8866, 2020 WL 252992, at *5 & n.7 (E.D. Va. Jan. 15, 2020) (noting that courts "have found that certain claims and defenses can be abandoned or

waived for failure to pursue them in the pleadings" including in opposition briefs) (collecting cases).

Turning to the paragraph B criteria, with respect to Plaintiff's abilities (i) to interact with others and (ii) to adapt or manage himself, Plaintiff argues that the ALJ should have found at least a *marked* limitation for each instead of the *moderate* limitations included in the ALJ's written decision. Pl.'s Brief [DE-16] at 23-24. The undersigned will only consider Plaintiff's arguments with respect to these two areas of mental functioning, as Plaintiff does not develop any arguments with respect to the two remaining areas of mental functioning. *See Padilla-Ruiz v. Commc'n Techs., Inc.*, 793 F. App'x 200, (Mem)–201 (4th Cir. 2020) ("A party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue.") (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)).

The regulations explain that a "moderate limitation" in an area of mental functioning means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, § 12.00F.2.c. (2025). The same regulations explain that a "marked limitation" means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00F.2.d. The undersigned will discuss Plaintiff's ability to interact with others and to adapt or manage himself together, as there is overlapping evidence in the record regarding these areas.

The regulations define "interaction with others" as:

the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: Cooperating with others; asking for help when needed; handling conflicts with others; stating your own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity,

argumentativeness, or suspiciousness.[3]

20 C.F.R. Pt. 404, Subpt. P, § 12.00E.2. (2025).

The ALJ found that Plaintiff has a moderate limitation in interacting with others, and specifically noted that:

> [Plaintiff] described himself as irritable and said he has a history of negative interaction with co-workers. In his function report, he endorsed problems getting along with others. Treatment records do show he presented with abnormal mood/affect but do not indicate he interacted inappropriately with providers. The [Plaintiff's] friend completed a third-party function report and denied [Plaintiff] has problems getting along with others.

Tr. 22.

Plaintiff argues that "[s]uch a limited and conclusory analysis of the evidence of record is insufficient, as a matter of law, to support the ALJ's conclusion that Dugan merely had a moderate impairment in the domain of interacting with others." Pl.'s Brief [DE-16] at 25.

The regulations define "adapting or managing oneself" as:

> the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. Pt. 404, Subpt. P, § 12.00E.4. (2025).

The ALJ found that Plaintiff has a moderate limitation in interacting with others, and specifically noted that:

> [Plaintiff] has required ongoing psychiatric care and has continued to report issues with suicidal ideation. However, treatment records do not show any attempts and he has been clean of any substances. The evidence also support he can prepare his

---

[3] The regulations clarify that "[t]hese examples illustrate the nature of this area of mental functioning" and that the Commissioner does not "require documentation of all of the examples." 20 C.F.R. Pt. 404, Subpt. P, § 12.00E.2.b.ii. (2025)

9

own food, can drive a car, handle money, shop in stores.

Tr. 22.

When assessing the adequacy of the ALJ's explanation of his step three findings, the undersigned has also considered the ALJ's discussion of Plaintiff's mental functioning limitations throughout the rest of his decision. *See Joyce H. v. Kijakazi*, No. 22-3152-CDA, 2023 U.S. Dist. LEXIS 203274, at *12 (D. Md. Nov. 8, 2023) ("An ALJ need not confine their Listing analysis to step three because 'the ALJ need only review medical evidence once in [their] decision.'") (alteration in original) (quoting *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002)); *Jones v. Berryhill*, No. 2:15-cv-13239, 2017 U.S. Dist. LEXIS 22758, at *3 (S.D. W. Va. Feb. 17, 2017) ("As long as the ALJ properly considers all the relevant evidence taken into consideration in making a step three finding at some point in the opinion, then his or her conclusion on that step will be upheld.") (citations omitted).

Plaintiff reasons that "the ALJ committed reversible error in failing to acknowledge or to perform any analysis or evaluate the persuasiveness of the [Department of Veterans Affairs ("VA")] psychological evaluation of [Plaintiff]" by Jennifer Staat, Ph.D. ("Dr. Staat"), a VA psychologist, on January 7, 2021. *Id.* Plaintiff notes Dr. Staat's finding that Plaintiff "was entitled to 100% service-connected disability for his PTSD." *Id.*

In his decision, the ALJ expressly recognized that Plaintiff "has VA ratings." Tr. 27. Yet the ALJ explains that for "claims filed on or after March 27, 2017, [an ALJ] is no longer required to provide any analysis in [his or her] decision about a decision made by any other governmental . . . entity regarding whether the claimant is disabled, . . .which includes VA ratings decisions." *Id.* The ALJ explained that he "considered the underlying medical evidence pertinent to his VA ratings." *Id.*

10

Under 20 C.F.R. § 404.1504, for claims filed "on or after March 27, 2017, [the Commissioner] will not provide any analysis in [his] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits." Plaintiff appears to concede this point, but argues that "[w]hile determination of disability is a legal issue, a fully persuasive opinion of [Plaintiff's] ability to function by [a] VA disability examining psychologist, such as Dr. Staat, can be used to find that a claimant has marked limitations in mental functional domains." Pl.'s Brief [DE-16] at 26.

Pursuant to the same regulation cited above, the Commissioner must "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [he] receive[s] as evidence in [the claimant's] claim in accordance with § 404.1513(a)(1) through (4)." *Id.* The Fourth Circuit affirmed the applicability of these regulations for claims filed on or after March 27, 2017. *Rogers v. Kijakazi*, 62 F.4th 872, 879 (4th Cir. 2023) ("[O]ur precedents do not trump the new SSA rules.").

On January 7, 2021, Dr. Staat conducted an in-person examination of Plaintiff and completed a disability benefits questionnaire. *See* Tr. 2069. The questionnaire states that it "is for disability evaluation, not for treatment purposes." *Id.* Plaintiff highlights Dr. Staat's documentation of various incidents in Plaintiff's past, including that Plaintiff "displayed impulsivity and violence, often punching holes in his door" (Pl.'s Brief [DE-16] (citing Tr. 2075)); "had pulled out a window from his butcher case and almost threw it when a woman startled him by hitting the counter" (*id.*), and "then ran into a cooler and curled up in a ball for an hour" (*id.*); and "was highly symptomatic at work and had come close to being impulsive or violent several times" (*id.* (citing Tr. 2076)).

11

The Commissioner notes that Dr. Staat's opinion was made "seven months *before* his alleged onset date." Def.'s Brief [DE-18] at 8. The Commissioner also emphasizes that "[t]he ALJ explicitly 'recognize[d]' that Plaintiff has VA ratings" and that the ALJ "is not required to provide any analysis in his decision about a decision made by any other governmental or nongovernmental entity regarding whether a claimant is disabled, which includes VA rating decisions." Def.'s Brief [DE-18] at 9 (second alteration in original) (citing Tr. 27).

Even if the undersigned did not consider Dr. Staat's questionnaire to constitute a medical opinion, it still contains medical evidence that is distinct from the ultimate VA disability determination. The Commissioner argues that the "ALJ considered and cited the VA record evidence" and "considered the evidence underlying Dr. Staat's PTSD Disability Benefits Questionnaire." *Id.* at 10 (citing Tr. 27, 2069). To the extent that the ALJ did consider the underlying evidence, it is unclear why the ALJ does not discuss any examples of Plaintiff's history of aggression and violence in his written decision.

Plaintiff highlights other examples of actual or potential violence in the medical record, including reports to "the VA in 2008 when he was in a physical fight with a co-worker at his job, nearly hitting his co-worker with a wrench" (*id.* at 27 (citing Tr. 2590)); "[i]n December 2014, he was triggered in an AA meeting, resulting in him physically fighting with his roommate and destroying property in his apartment" (*id.* (citing Tr. 3180, 3185)); "[i]n December 2020, Dr. Basquill, a VA psychologist, noted that he was being frequently triggered by co-workers, experiencing violent thoughts, becoming more frustrated and concerned about maintaining his composure" (*id.* at 27-28 (citing Tr. 1526)). The Commissioner counters that "there is no requirement that an ALJ mention every piece of evidence in the record individually." Def.'s Brief [DE-18] at 10. The Commissioner is correct that the ALJ is not required to discuss every piece

12

of evidence in the record. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). Yet where a court is "left to guess about how the ALJ arrived at [her] conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015)).

The undersigned notes that essentially all of the incidents Plaintiff highlights occurred prior to August 9, 2021, Plaintiff's alleged onset date. Tr. 69. At the same time, this court has held that "[w]here evidence predating the alleged date of disability is made part of the record, the regulations require the Commissioner to consider that evidence." *Cotton v. Colvin*, No. 5:14-CV-425-FL, 2015 WL 5714912, at *3 (E.D.N.C. Sept. 29, 2015) (citing 20 C.F.R. § 404.1520(a)(3)); *Hatley v. O'Malley,* No. 5:23-CV-16-KS, 2024 WL 166002, at *4 (E.D.N.C. Jan. 16, 2024) ("That some of this evidence pre-dates the period at issue does not necessarily make it irrelevant.").

Here, the reports in medical records of actual or potential violence provide evidence in support of Plaintiff's subjective allegations that he made violent threats or engaged in violent behavior while he was working. *See* Tr. 56 (Plaintiff testifying that he has gotten into physical fights at work with supervisors and coworkers); 51-52 (Plaintiff testifying that while working, he put a co-worker into an inactive meatgrinder and challenged his supervisor to a fist fight in the cooler); 57 (Plaintiff testifying that he threw a window at a customer).

While the ALJ notes that Plaintiff "described himself as irritable and said he has a history of negative interaction with co-workers," the ALJ does not mention any of Plaintiff's violent behaviors directed at others. Tr. 22.[4] Based on this omission, it is unclear whether the ALJ considered Plaintiff's history of aggression in making his step three findings. As such, and considering the records discussed herein, the court cannot determine whether the ALJ's decision

---

[4] The ALJ does note Plaintiff's self-inflicted gunshot wound in 2015. Tr. 24.

13

is supported by substantial evidence.

The Commissioner cites numerous references in the ALJ's decision indicating that Plaintiff's mental health conditions were being effectively managed, including that (i) "although Plaintiff presented with abnormal mood/affect, [medical records] do *not* indicate that he interacted inappropriately with providers" (Def.'s Brief [DE-18] at 11 (citing Tr. 22)), and (ii) "Plaintiff's friend completed a third-party function report wherein he denied Plaintiff had problems getting along with others" (*id.*). Yet the ALJ's failure to explain how this evidence mitigates Plaintiff's history of aggression and violence leaves the undersigned to guess about how the ALJ arrived at his conclusions at step three of the sequential evaluation process.

Similarly, while the ALJ notes the observations from medical providers that Plaintiff had "good impulse control," Plaintiff's testimony and certain medical records indicate that his coping mechanisms involve, in part, leaving the space where he finds himself when he experiences interpersonal conflict. *See* Tr. 33 ("Okay. You're making me upset, and maybe I should just walk out of the room."); 53-54 (Plaintiff explaining that he had to leave the grocery store and sit in his car when a fellow customer kept talking to him). The ALJ does not appear to accommodate this limitation in the RFC or explain why no such limitation is necessary. Accordingly, the undersigned is unable evaluate the relevance of this coping mechanism for the ALJ's discussion of the two areas of mental functioning at issue.

While the ALJ may be able to cite evidence or provide explanation justifying his decision that Plaintiff's aggressive tendencies did not change the ALJ's assessment of the relevant areas of mental functioning, the ALJ does not discuss any such evidence in the written decision. Accordingly, the ALJ here fails to "build an accurate and logical bridge from the evidence to [his apparent] conclusion" that Plaintiff only had moderate limitations in his ability to interact with

14

others and to adapt or manage himself, in light of the aggressive manifestations of his PTSD. *See Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned RECOMMENDS this case be remanded to the Commissioner for further proceedings. On remand, the Commissioner should include a narrative discussion about how the evidence leads to each conclusion with respect to his determinations, so that meaningful judicial review would be permitted, if necessary. While the undersigned finds that remand is necessary for the reasons discussed above, to be clear, the court expresses no opinion as to whether Plaintiff does or does not (i) meet the criteria of Listing 12.15, or (ii) require additional limitations.

### B. Remand or payment

Plaintiff contends the claim should be ordered paid rather than remanded for further proceedings. Pl.'s Brief [DE-16] at 2. Plaintiff argues that "[t]his is not a case in which there is any doubt as to the impact or severity of Dugan's multiple severe medical conditions, including his PTSD, on his life." Pl.'s Brief [DE-16] at 32. The court disagrees.

"The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that 'lies within the sound discretion of the district court.'" *Cottle v. Kijakazi*, No. 7:20-CV-227-BO, 2022 WL 329878, at *3 (E.D.N.C. Feb. 3, 2022) (quoting *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)). "Federal courts . . . have awarded disability benefits without remand where the record clearly establishes the claimant's entitlement to benefits and another ALJ hearing on remand would serve no useful purpose." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 111 (4th Cir. 2020) (citing *Hines v. Barnhart*, 453 F.3d 559, 567 (4th Cir. 2006); *Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980); *Revels v. Berryhill*, 874 F.3d 648, 668-69 (9th Cir. 2017); *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003); *Kalmbach v. Comm'r*

15

*of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011)). "When '[o]n the state of the record [Plaintiff's] entitlement to benefits is wholly established,' reversal for award of benefits rather than remand is appropriate." *Argeris v. Colvin*, 195 F. Supp. 3d 812, 817-18 (E.D.N.C. 2016) (first alteration in original) (quoting *Crider*, 624 F.2d at 17).

Here, Plaintiff fails to satisfy this high bar. Indeed, the majority of the medical evidence that Plaintiff cites in support of his position predates his alleged onset date. While the undersigned finds that additional explanation from the ALJ is necessary for the reasons discussed above, he has expressly made no findings on the results that such additional consideration are likely to produce.

Accordingly, the undersigned RECOMMENDS that Plaintiff's request for reversal as opposed to remand be DENIED.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-16] be ALLOWED IN PART, Defendant's brief [DE-18] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 9, 2025**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local

rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by **the earlier of 14 days from the filing of the objections or September 19, 2025.**

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this 28th day of August, 2025.

_____
Brian S. Meyers
United States Magistrate Judge